UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA JESUS ANELLO,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 18-cv-00070-DMR

**ORDER ON DEFENDANT'S MOTION
TO DISMISS AMENDED COMPLAINT**

Re: Dkt. No. 50

Pro se Plaintiff Maria Jesus Anello filed an amended complaint against her former employer, the United States Social Security Administration ("SSA") alleging claims for disability discrimination, wrongful termination, and violation of the Administrative Procedure Act. [Docket No. 47.] The government now moves to dismiss the claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). [Docket No. 50.] This matter is appropriate for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted. The court grants leave to amend certain claims, but others are dismissed with prejudice.

I.     **BACKGROUND**

A.     **Allegations in the Amended Complaint[1]**

Ms. Anello makes the following allegations in the amended complaint ("FAC"): Ms. Anello worked as a Service Representative at SSA's Santa Rosa, California field office from August 12, 2001 until August 12, 2011. FAC ¶¶ 12, 14. She describes her job responsibilities as follows: "Service Representatives provide assistance to the public by answering a variety of

---

[1] The court notes that the FAC contains misnumbered paragraphs and claims for relief. For example, pages one through 10 contain consecutively-numbered paragraphs one through 59, but page 11 starts with a second paragraph 44, and page 21 contains paragraphs numbered 104, 105, one, and two. The court provides page numbers along with paragraph numbers where necessary.

questions, by interviewing the individual, investigating the situation and resolving the problem." *Id*. at ¶ 7.

At the time Ms. Anello started working for the SSA in 2001, she was a "[d]isabled Individual with one Open Heart Surgery, and under the care of a Cardiologist, with permanent Atrial Fibrillation, History of Stroke, and Hypothyroidism." *Id*. at ¶ 12. During the first nine years of her employment, Ms. Anello's desk was "configured so that anyone approaching [her] desk would approach from the front." *Id*. at ¶¶ 15-16. In May 2010, prior to a planned office remodel, Ms. Anello asked that her desk be configured the same way, as a "reasonable accommodation" of her heart conditions, and "submitted five doctors' notes in support of this request." According to Ms. Anello, "having people approach [her] from behind startles [her], which can negatively impact [her] heart condition." *Id*. at ¶¶ 15-16. Ms. Anello's request was denied. Instead, she received the accommodation of installing a mirror at her desk "so that [she] could see people approaching from behind." *Id*. at ¶¶ 16, 78. Ms. Anello alleges that after she moved desks and installed the mirror, her supervisor began approaching her desk more frequently than she had before, which "aggravat[ed] [her] heart condition" and caused stress to Ms. Anello's neck "as [she] frequently had to look in the mirror to see who was approaching," which she alleges "eventually led to injury to my left hand[.]" *Id*. at ¶ 17.

On August 2, 2010, Ms. Anello was injured at work while typing: she "felt a stabbing pain going from [her] left wrist and fingers, all the way to the elbow and up [her] arm." *Id*. at ¶ 18. She alleges that her injury resulted from SSA's denial of her request to reverse the orientation of her desk. *See id*. at ¶ 17, FAC at 22 ¶ 2(e) ("The intolerable conditions created by not accommodating my request of desk reversal as established in all the laws and regulations of OPM, ADA, ADEA, EEOC for employees with disabilities, which caused my work injury."); FAC at 12 ¶ 48 (alleging that her "disability, including my heart condition and the hand injury caused by Defendant's refusal to accommodate my heart condition, was the sole reason or motivating factor for Defendant['s]" conduct). Ms. Anello was eventually diagnosed with "CRPS (Complex Regional Pain Syndrome), that has disfigured [her] left hand with muscular and nerve loss," and resulted in "constant pain" in her hand and a "stiffened and sore" neck. FAC ¶ 55, FAC at 12 ¶

53. Her disability "limit[s] [her] major life activities in the following ways: needing constant medication for pain, sleeping, walking, standing, lifting, speaking, learning, reading, concentrating, thinking, communicating, and working." *Id*. at ¶ 58; *see also* FAC at 11 ¶ 45. In addition to CRPS, Ms. Anello alleges the following: "The disability I have or that Defendant saw or believed I had: Permanent Atrial Fibrillation, past Heart Surgery, Neuropathic Pain, . . . Cervical Pain, Strain of fingers/wrist of left hand, fast weight loss, crying because of the terrible pain, inflammation of left arm and hand, loss of muscular or nerve mass on my left hand." FAC at 15 ¶ 71.

Ms. Anello filed a worker's compensation claim in December 2010. FAC ¶ 19. She alleges she was harassed by the Assistant District Manager ("ADM") for her disability and injury following the filing of her claim. FAC at 12 ¶ 49. For example, the ADM commented on her accent, teased her about the pain she was experiencing, and refused to complete her worker's compensation paperwork. FAC ¶ 19. He also "harassed and insulted [her] with the looks, and nasty comments" and "started obstructing all the remedies that [she] had as a Disabled Individual, he took it really bad as, he was the instrumental person involved in the denial of turning [her] desk around." *Id*. at ¶¶ 83, 86. She was "required to present Work Status Reports from [her] doctors to document again and again [her] condition." *Id*. at 22 ¶ 2(d); *see also* FAC at 17 ¶ 79.

While waiting for the ADM to complete her worker's compensation paperwork, Ms. Anello applied for leave with the Voluntary Leave Transfer Program ("VLTP"), a program "where co-workers can donate time." FAC ¶ 20. Her workers' compensation claim was granted, her "manager denied [her VLTP] based on the grant," and the next day her workers' compensation grant was reversed, yet her managers "refused to allow [her] to participate in the [VLTP]" and "continued to obstruct the paperwork." *Id*. Because she was out of leave, Ms. Anello "went back to work in January 2011." *Id*. at ¶ 21. She again tried to apply for VLTP in February 2011 yet "[n]othing was done on [her] application for two months." *Id*. at ¶ 22. In April 2011, Ms. Anello "found a way to apply for [VLTP] by going around [her] manager." *Id*. at ¶ 23. She "was accepted, added to the VLTP list and people began donating time to [her]," but the ADM "rejected the donations to [her] and demanded that [she] be taken off the VLTP list" in May 2011. *Id*. at ¶¶

23, 87.

In May 2011, Ms. Anello "could only work 41.75 hours due to the extreme pain" she was experiencing. *Id*. at FAC ¶ 27. At the end of May 2011, Ms. Anello received the following work restrictions: "I needed to take medication orally, to take a five minute break from typing every twenty minutes, [and] not to lift more than five pounds with my left hand." These restrictions were valid from May 26, 2011 until August 26, 2011. *Id*. at ¶ 24. Ms. Anello alleges that her supervisors interfered with her restrictions. For example, on or around June 27, 2011, the ADM "physically tried to interfere with taking [her] medication." *Id*. at ¶ 25; FAC at 24 ¶ 3. Further, "nearly every time [Ms. Anello] attempted to take a break, [she] was told it wasn't time for [her] break yet, that [she] had not been typing enough and was subject to similar harassments." FAC ¶ 25; FAC at 24 ¶ 3.

Around this time, Ms. Anello "contacted [her] Occupational Doctor and requested to review the valid restrictions but only to add instead of minutes of work, to say 'to what the patient can resist'." FAC ¶ 26. Elsewhere in the FAC, Ms. Anello alleges that on June 29, 2011, her supervisors forced her to obtain new work restrictions: "management advised [her] that [she] was required to have ]her] doctor institute restrictions on both of [her] hands, even though [she] had not had an injury to [her] right hand," and that she would otherwise "not be entitled to any accommodations." *Id*. at ¶ 30; *see also* ¶ 80 ("On 6/29/11, I had hand therapy early, when I got back to the Office, management informed me that I was not going to be allowed to have my Reasonable Accommodations unless I provided them a new Work Status Report (WSR) with restrictions for both hands."); FAC 13 at ¶ 54 (alleging "management demanded restrictions for both arms/hands from my doctor"); FAC 23 at ¶ 5 ("Plaintiff's physician was imposed by management to establish the severe restrictions of 06/29/11 that included restrictions for both hands"); FAC ¶ 31 ("On June 29, 2011, I was informed by my supervisor that my doctor had sent the revised restrictions, as they had demanded."); FAC ¶ 59 ("[A]fter Defendant demanded that my doctor impose new restrictions on both of my hands, Defendant refused to accommodate them, and placed me on unpaid leave.");FAC ¶ 103 ("Management and HR refused to accept me back in the Office on July, because of the Work Status Report (6/29/11) with its forced and demanded

4

restrictions for both hands and based on disability discrimination.").

On July 1, 2011, Ms. Anello arrived at work and "was presented with a letter by [her] manager telling me that they would not accommodate [her] according to the restrictions that they had insisted [her] doctor impose." FAC ¶ 34; *see also* FAC 13 at ¶ 55. Ms. Anello's supervisors "told [her] to come back to work in October," and failed to inform her that she was being placed on unpaid leave. They also failed to advise her of her "right to alternative methods of leave." FAC ¶¶ 35, 36.

Ms. Anello alleges that by mid-July 2011, she was having trouble paying her bills and applied for disability retirement. FAC ¶ 37. She alleges that she would not have applied for disability retirement "if she was in a pay status." FAC at 24 ¶ 4. According to Ms. Anello, "[n]othing happened" with her application for disability retirement, and on August 22, 2011, "Human Resources submitted a Retirement MRA+10 (Non-Disability) application, supposedly on [her] behalf." FAC ¶¶ 37, 38. Ms. Anello alleges that she "did not authorize this submission or this signature" and that she was not informed of the impact of the application on her retirement benefits. *Id*. at ¶ 38. The "false application would result in [Ms. Anello] being entitled to just $19 (nineteen) per month, after paying [her] FERS health insurance[.]" *Id*. at ¶ 39.

After learning from her manager that she was "retired," Ms. Anello requested that the Office of Personnel Management ("OPM") "withdraw and cancel the false non-disability retirement application." FAC ¶ 43. "OPM agreed and did so and sent [Ms. Anello] a confirming letter," which she received on September 22, 2011. FAC ¶ 43, FAC at 13 ¶ 60, FAC at 14 ¶ 61. Ms. Anello "presented the letter to management at the Santa Rosa Office, but in their discrimination against [her], they keep denying the cancellation/rescindment, calling it a withdrawal and postponement of [her] retirement until 62, SSA management didn't want [her] back as an employed disabled individual." FAC at 14 ¶ 62. Ms. Anello was approved for disability retirement on January 13, 2012, and OPM informed SSA "that [she] was to be retired effective January 13, 2012." FAC ¶ 45. Ms. Anello alleges SSA "still keeps refusing to comply with the directives of OPM and correct accordingly the Standard Form 50 (SF-50) Notification of Personnel Action from: Retirement-Voluntary to Retirement-Disability." FAC ¶ 46. Specifically,

Ms. Anello alleges that SSA "refuses to correct the date of [her] [voluntary retirement] on the SF-50 (Notification of Personnel Action), to be the Disability Retirement date of the approval (01/13/2012) of SSA DIB/RIB by OPM, which confirms my Revocation was on 9/22/2011, OPM requested from the agency to retire me with the date of January 13th, 2012 in the SF-50 form." FAC at 19 ¶ 94. Ms. Anello alleges that as a result of SSA's actions, "once [she] turned 62, [her] disability retirement benefits ended, and [she] began receiving only a small amount ($253.53 as of the 1st of September 2018) according to the false 'voluntary' retirement, and not FERS Disability/Retirement." FAC ¶ 49.

Ms. Anello alleges that she "filed charges with the Equal Employment Opportunity Commission" regarding SSA's conduct on or about July 24, 2011, and that her charges were "filed as instant formal complaint on October 29, 2011." FAC ¶ 9. Ms. Anello "blame[s] [her] heart condition to [her] CRPS, and to "the stress [she] had preparing 3 difference Cases and Motions at the same time," including her EEOC and worker's compensation appeals. FAC at 20 ¶¶ 99-102.

She alleges seven overlapping claims for relief in the FAC, although the FAC contains two "second" claims for relief. *See* FAC at 8-9. The first six claims are brought pursuant to Section 501 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq. See* FAC ¶ 3. Claims one through six allege disability discrimination, failure to provide reasonable accommodation, and hostile work environment/harassment based on disability. The seventh claim (labeled the "sixth claim") is for violation of the Administrative Procedure Act.[2]

### B.    EEO Proceedings

The court takes the following background of Ms. Anello's EEO proceedings from the exhibits attached to the declaration of In Seon Jeong, which are part of the administrative record of the underlying administrative proceedings.[3]  [*See* Docket No. 51 (Jeong Decl., Oct. 18, 2018).]

---

[2] The court notes that Ms. Anello references a claim for retaliation in her brief in opposition to the government's motion to dismiss. *See* Opp'n 30. No such claim is pleaded in the FAC.

[3] When considering a factual challenge to subject matter jurisdiction under Rule 12(b)(1), as the court does here, it "may rely on evidence extrinsic to the pleadings and is not required to presume the truthfulness of the complaint's allegations." *Robinson v. Geithner*, 359 Fed. Appx. 726, 728 (9th Cir. 2009) (considering the "[l]anguage in [the plaintiffs'] administrative complaint[s]" in determining whether allegations in the civil complaint were exhausted).

On July 24, 2011, Ms. Anello initiated a request for Equal Employment Opportunity ("EEO") counseling asserting discrimination based on sex, ethnic origin, and disability, as well as retaliation "for past complaints, obstruction W/C and VLTP, [and] hostile work environment." Jeong Decl. ¶ 2, Ex. A. Ms. Anello filed a formal complaint of discrimination dated October 29, 2011. *Id.* at ¶ 3, Exs. B, C.

On November 27, 2011, SSA accepted for investigation the following claim:

> Whether the Agency subjected you to discrimination based on national origin (Hispanic), physical disability (Cervical Radiculopathy and RSD (sic)), and in reprisal for your participation in prior protected EEO activity when:
>
> a) You were repeatedly denied reasonable accommodation for your disabilities from approximately December 2010 and continuing in spite of providing continuous and sufficient medical documentation in support of your reasonable accommodation requests;
>
> b) On June 18, 2011 and continuing, your supervisor did not support your application for the Voluntary Leave Transfer Program and refused to accept donations of leave to you from other employees;
>
> c) You were constructively discharged, by being forced to apply for FERS Disability/Retirement on or about July 2011, as a result of your supervisors [sic] failure to support your reasonable accommodations requests and your request for participation in the Voluntary Leave Transfer Program; [and]
>
> d) Your supervisor refused to acknowledge your retention as an employee even though you immediately withdrew your request for retirement and your withdrawal was accepted and acknowledged in writing by OPM on or about September 22, 2011.

*Id.* at ¶ 5, Ex. D. Ms. Anello submitted affidavits to the EEO in support of her complaint on December 19, 2011, December 22, 2011, and January 20, 2012. *Id.* at ¶¶ 6-8, Exs. E, F, G.

On June 11, 2012, SSA issued its initial Final Agency Decision. *Id.* at ¶ 9, Ex. H. Following appeals through the Merit Systems Protection Board and the EEO Commission, Office of Federal Operations, SSA issued its Final Agency Decision on April 1, 2015. *Id.* at ¶¶ 9, 10, Ex. I. The SSA found that it "did not discriminate against [Ms. Anello] based on national origin, disability and reprisal." *Id.* at Ex. I at 14.

### C. Procedural History

On November 20, 2017, Ms. Anello filed a complaint which did not formally plead

individual claims for relief but in which she alleged that she suffered discrimination and retaliation during her employment by the SSA. The court liberally construed the complaint to allege claims for 1) disability discrimination; 2) failure to accommodate disability; 3) employment discrimination based on national origin (Spanish); and 4) retaliation.

The government moved to dismiss the complaint. [Docket No. 17.] Following a hearing on August 9, 2018, the court granted the motion and dismissed the complaint. *Anello v. Berryhill*, No. 18-cv-00070-DMR, 2018 WL 3845617 (Aug. 13, 2018). The court granted Ms. Anello leave to file an amended complaint by September 4, 2018 alleging claims for disability discrimination, failure to accommodate disability, national origin disability, retaliation, and age discrimination. *Id*. at *4-6. The court dismissed any claim under the Federal Employees' Compensation Act for lack of subject matter jurisdiction. *Id*. at *6-7. Ms. Anello filed the FAC on September 5, 2018. [Docket No. 47.] The government now moves to dismiss.

## II.    LEGAL STANDARDS

The government moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

### III.    DISCUSSION

#### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The government moves pursuant to Rule 12(b)(1) to dismiss certain allegations in the FAC that it claims exceed the scope of the EEO proceedings.  It argues that Ms. Anello cannot establish the court's jurisdiction over these allegations because she did not raise them in her EEO charge and thus did not exhaust her administrative remedies as to the allegations.

To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her EEO administrative remedies before filing suit in federal court.  *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).  "While not all administrative exhaustion requirements are jurisdictional in nature, Ninth Circuit 'case law holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite.'"  *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1058 (emphasis in original) (quoting *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001)).  "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation."  *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).  Although the "specific claims made in district court ordinarily must be presented to the EEOC," the district court "has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations."  *Id.* (citing *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir.1990) and *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Further, courts "should consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  The Ninth Circuit has instructed courts to construe "EEOC charges . . . with utmost liberality since they are made by those unschooled in the technicalities of formal pleading."  *Sosa*, 920 F.2d at 1458.

The government argues that the court lacks subject matter jurisdiction over the following three allegations due to Ms. Anello's alleged failure to raise them in her EEO charge: 1) that Ms.

Anello's managers forced her doctors to impose new restrictions on both of her hands (*see* FAC ¶ 59); 2) that SSA "forged" her voluntary retirement application and submitted it on her behalf without her authorization (*see* FAC ¶ 38); and 3) that Ms. Anello now suffers from a heart condition related to her administrative appeal (*see* FAC at 20 ¶¶ 99-102).

          **1.**       **Claim that Management Demanded That Ms. Anello's Doctor Impose Further Medical Restrictions**

First, the government challenges the FAC's allegation that "Defendant demanded that [her] doctor impose new restrictions on both of [her] hands." *See* FAC ¶ 59; *see also id.* at ¶ 30 ("management advised me that I was required to have my doctor institute restrictions on both of my hands, even though I had not had an injury to my right hand"); FAC at 17 ¶ 80; FAC at 20 ¶ 103. The government argues that this allegation did not fall within the scope of the EEO charge and investigation, or any investigation that "reasonably could be expected to grow out of the allegations." *See Leong*, 347 F.3d at 1122. Specifically, the government points to Ms. Anello's EEO charge, in which she alleged that on June 28, 2011, her supervisor, Paul Sampson, "denied [her] [her] Reasonable Accommodations, telling [her] that he did not believe [Ms. Anello] needed a break to take [her] medications," and that his action "made [her] contact [her] doctor who faxed the new RA on the 29th." Jeong Decl. Ex. C at 3. This allegation corresponds to the agency's acceptance of Ms. Anello's claim that she was "constructively discharged . . . as a result of [her] supervisors [sic] failure to support [her] reasonable accommodations request" for investigation. *Id.* at Ex. D at 1. The court has carefully reviewed the administrative record. It contains no evidence that Ms. Anello challenged the scope of the investigation or alleged in those proceedings that management "demanded" or forced Ms. Anello to obtain new restrictions from her doctor. To the contrary, Ms. Anello asserted in the administrative proceedings that when her symptoms "continued to worsen," her "doctors increased the restrictions noticing that [she] was getting reinjured daily." *Id.* at Ex. G at 25; *see also id.* at 47.

In her opposition, Ms. Anello concedes that not all of the allegations in the FAC were in her EEO complaint. Opp'n 26 ("Maybe the[y] are not in Plaintiffs [sic] EEO complaint but they are true."). As to the specific allegation that management demanded that she obtain new

restrictions, Ms. Anello states that "Plaintiff's physician did not agree (it was imposed on her or I could not have the previous accommodations from the 28 approved)," citing an exhibit to her opposition in support. Opp'n 26 (citing Ex. B). Exhibit B to Ms. Anello's opposition consists of copies of "Work Status Reports" by Ms. Anello's physician dated May 26, 2011, June 28, 2011, and June 29, 2011, which appear to contain Ms. Anello's work restrictions as of those dates. [Docket No. 56-3.] Exhibit B also contains what appear to be emails between Ms. Anello and her physician discussing her need for new work restrictions. *See id*. However, neither Ms. Anello's opposition nor Exhibit B addresses whether she exhausted her administrative remedies as to her allegation that management demanded that she obtain new restrictions. The court concludes that Ms. Anello failed to exhaust her administrative remedies as to this allegation, since it was not presented to the agency for investigation and was not "like or reasonably related to" the allegations she made in her EEO complaint. *See* Leong, 347 F.3d at 1122. Accordingly, the court lacks subject matter jurisdiction over this allegation and any claim based on the allegation is dismissed with prejudice.

### 2.    Claim that SSA Forged Her Retirement Application

The government next moves to dismiss Ms. Anello's claim that management "forged" her voluntary retirement application. FAC ¶ 38 ("I did not authorize this submission or this signature, nor was I informed what effect this forged application would have on my retirement benefits."); FAC at 25 ¶ 1. In her EEO charge, Ms. Anello alleged the following: "On July I applied for FERS Disability/Retirement and SSA Disability[.] On August 12, because I was not in the VLTP program, and I was not getting any income, I applied for FERS Retirement, soon I realized that I made a mistake, and I contacted Management and Human Resources withdrawing my FERS Retirement." Jeong Decl. Ex. C at 4. The agency accepted for investigation Ms. Anello's claim that she was "constructively discharged, by being forced to apply for FERS Disability/Retirement on or about July 2011, as a result of [her] supervisors [sic] failure to support [her] reasonable accommodations requests and [her] request for participation in the Voluntary Leave Transfer Program." *Id*. at Ex. D at 1. In Ms. Anello's affidavits during the administrative proceedings, Ms. Anello described her decision to retire: "I was forced to apply for retirement/disability benefits in

order to have income to survive" (Jeong Decl. Ex. E at 6, ¶ 28); "on August 12, 2011 I was requested to send another Retirement package . . . I submitted the paperwork to SSA human resources, but later decided to withdraw my request for retirement because of incorrect information that I had been given about retirement/disability" (Jeong Decl. Ex. E at 7, ¶ 29); "Management convinced or coerced a trusted individual and friend to advise me to apply for voluntary retirement" (Jeong Decl. Ex. G at 61); "I was not offered any solutions to a desperate decision based on my lack of resources as a result of the bad intentions, bad advise [sic], and misinformation by the agency about the implication of a voluntary retirement for a disabled employee" (Jeong Decl. Ex. G at 89).  Her EEO charge and affidavits are silent as to any allegation that her retirement application was "forged" by management.

Following the EEO charge and investigation, the agency issued an initial Final Agency Decision on June 11, 2012.  The government asserts that on September 2, 2014, in the course of her appeal, Ms. Anello raised the issue of forgery for the first time in a brief submitted to the Office of Federal Operations ("OFO"), in which she mentioned "documents signed without authorization and altered fraudulently by the Agency's HR."  Jeong Decl. ¶ 15, Ex. M at 2.  *See Id*. at 6 ("The Voluntary Retirement with an *unauthorized signature* is wholly inoperative and will not bind." (emphasis in original)).  The OFO did not address this allegation in its decision.  Jeong Decl. ¶ 12, Ex. J.  The government argues that the allegation of forgery, raised two years after Ms. Anello's EEO complaint and the agency's investigation, could not "reasonably . . . be expected to grow out of" her charge of discrimination.  *See Leong*, 347 F.3d at 1122.

Ms. Anello does not address the government's argument that she did not exhaust her administrative remedies in her opposition, instead asserting that SSA "tampered and falsified" documents.  Opp'n 9; *see also id*. at 26 ("tampering of documents, false proofs, false accusations, misinformation, and fabrications.").  However, elsewhere in her opposition she admits that she *decided* to apply for retirement, asserting that "[a] reasonable person in the Plaintiff's position would have made only the decision of applying for FERS DIB/RIB if the person believed it to be the only means to get a payment . . . and is supported by corroborating circumstances that clearly indicate it was the only choice Plaintiff had[.]"  *Id*. at 21.  The court concludes that Ms. Anello

1    failed to exhaust administrative remedies as to her claim that SSA forged her retirement

2    application.  Any claim based on this allegation is dismissed with prejudice for lack of subject

3    matter jurisdiction.

### 3. Allegations of Harm Arising After the EEO Proceedings

5        Finally, the government moves to dismiss any claim based on alleged harm Ms. Anello has

6    experienced since September 22, 2011, the final date of allegations accepted by the agency.  Jeong

7    Decl. Ex. D.  The FAC alleges that Ms. Anello now suffers from a "heart condition" as a result of

8    her CRPS and "the stress [she] had preparing 3 difference Cases and Motions at the same time,"

9    including her EEO and worker's compensation appeals.  FAC at 20 ¶¶ 99-102.  As this claim is

10   based on actions that post-date the matters accepted for investigation, it was not within the scope

11   of the EEO investigation.  *See Ulloa v. Potter*, 442 Fed. Appx. 334, 336 (9th Cir. 2011) (holding

12   that court lacked subject matter jurisdiction to hear retaliation claim based on actions that took

13   place after EEO proceeding because it was not "like or reasonably related to the allegations made

14   before the EEOC" since the "dates, factual details and alleged perpetrators" were different).

15       Ms. Anello does not address this allegation in her opposition and thus concedes it.

16   Accordingly, any claim based on the injuries or harms Ms. Anello has suffered since the filing of

17   her EEO complaint is dismissed with prejudice for lack of subject matter jurisdiction.

### B. Motion to Dismiss for Failure to State a Claim

19       The government next moves pursuant to Rule 12(b)(6) to dismiss Ms. Anello's remaining

20   claims.

### 1. Rehabilitation Act Claims

22       The first through fifth claims, including the two separate claims labeled "second claim,"

23   allege disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791, which provides the

24   exclusive remedy for federal employees alleging disability discrimination.  *Johnston v. Horne,* 875

25   F.2d 1415, 1420 (9th Cir.1989), *overruled on other grounds by Irwin v. Dep't of Veterans Affairs,*

26   498 U.S. 89 (1990).  Courts use the standards applied under the Americans with Disabilities Act

27   ("ADA") to determine whether a violation of the Rehabilitation Act occurred in the federal

28   employment context.  *Lopez v. Johnson,* 333 F.3d 959, 961 (9th Cir. 2003) ("Section 501 borrows

its substantive standards from the Americans with Disabilities Act (ADA)." (citing 29 U.S.C. § 791(g)); *see also Coons v. Sec'y of the U.S. Dept. of* Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act").

### a.     Disability Discrimination

In order to state a disability discrimination claim under the Rehabilitation Act, a plaintiff must allege that "(1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). For purposes of the Rehabilitation Act, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." *Id*. (citing 42 U.S.C. § 12102(2)).

Here, the FAC does not sufficiently allege that Ms. Anello is "otherwise qualified for employment." A qualified individual is "an individual with a disability who, *with or without reasonable accommodation*, can perform the *essential functions* of the employment position that such individual holds or desires." *Bates v. United Parcel Serv.*, 511 F.3d 974, 989 (9th Cir. 2007) (emphasis in original) (quoting 42 U.S.C. § 12111(8)). "'Essential functions' are 'fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position.'" *Id*. (quoting 29 C.F.R. § 1630.2(n)(1)). "Even when a disabled employee cannot perform the essential functions of her job unassisted, she can still be qualified for the position if she could accomplish its essential functions 'with . . . reasonable accommodation.'" *Brown v. Potter*, 457 Fed. Appx. 668, 670 (9th Cir. 2011) (quoting 42 U.S.C. § 12111(8)). "Reasonable accommodations" are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Although the FAC sets forth Ms. Anello's disability and medical conditions, it does not sufficiently identify the essential functions of the position that Ms. Anello held. It also does not

allege that Ms. Anello could perform those functions with or without a reasonable accommodation. In order to determine whether a plaintiff is a qualified individual, "[t]he court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Bates*, 511 F.3d at 990 (citations omitted).

Here, Ms. Anello identifies her position as "Service Representative Bilingual (Spanish/English)," and describes her job responsibilities by identifying only four tasks: "Service Representatives provide assistance to the public by answering a variety of questions, by interviewing the individual, investigating the situation and resolving the problem." FAC ¶¶ 6, 7. The FAC contains no additional details about the essential functions of the position. Moreover, although the FAC contains numerous allegations about Ms. Anello's physical condition and limitations, it omits any discussion of the physical requirements of the Service Representative position. For example, the FAC makes a number of references to typing and keyboarding, as well as work restrictions related to Ms. Anello's use of her hands and wrists. The FAC alleges that in August 2010, Ms. Anello was "injured at work while typing at the front desk while opening the computer for the start of the day," and that her doctor subsequently gave her work restrictions, including taking "a five minute break from typing every twenty minutes" and precluding her from lifting more than five pounds with her left hand. *Id*. at ¶¶ 18, 24. The FAC further alleges that she was subjected to "harassment" when she attempted to observe these restrictions: "nearly every time I attempted to take a break, I was told that it wasn't time for my break yet, that I had not been typing enough[.]" *Id*. at ¶ 25. Although these allegations suggest that Ms. Anello's supervisors expected her to type and/or use a computer to carry out her job duties, the FAC is silent as to any physical requirements of the Service Representative position, and silent about whether she could perform any of physical requirements of the job with or without a reasonable accommodation.

The FAC also contains the conclusory allegations that "[i]n 2010, [Ms. Anello] was a qualified individual who, with or without a reasonable accommodation, could perform the essential functions of the position and satisfied the skill, experience, education, and other job-

related requirements of the position, which [she] had been performing for many years," and that she "always had good reviews, even after [her] work related injury." *Id.* at ¶ 8; FAC at 15 ¶ 70(b). In her opposition, Ms. Anello asserts that she "was able to perform the duties of her position," citing to a March 2011 performance evaluation submitted with her opposition. Opp'n 27; Ms. Anello Decl., Nov. 9, 2018 ¶ 5, Ex. D; *see also* Opp'n 25 (noting that Ms. Anello's "bi-annual Performance Review" gives "an idea of the duties of [her] position as Service Representative). As an initial matter, as the performance evaluation is not attached to the FAC, the court cannot consider it. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Moreover, receiving "good reviews" after an injury does not address which essential functions Ms. Anello could perform in light of her alleged disabilities, including the physical requirements of the job, or how she could perform them with or without reasonable accommodation. These allegations are insufficient to plausibly allege that Ms. Anello could have performed the essential functions with or without a reasonable accommodation. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Therefore, the court concludes that the FAC does not sufficiently allege that Ms. Anello was a qualified individual. Her disability discrimination claims are dismissed.

### b. Failure to Accommodate

Ms. Anello also brings two claims for failure to accommodate her disability. In order to state a claim under the Rehabilitation Act for failure to accommodate a disability, a plaintiff must show that (1) she is disabled; (2) she is a qualified individual, meaning that she could meet the essential requirements of the position with or without reasonable accommodation; and (3) a reasonable accommodation is possible. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Ms. Anello's failure to accommodate claims appear to be based on management's denial of her requests to change the configuration of her desk, denial of her requests for "short breaks from typing and the ability to take pain medi[c]ation," and refusal to accommodate her work restrictions on both hands. *See* FAC ¶¶ 51, 57, 59; see also FAC at 22 ¶¶ 2(e)-(g), 23 at ¶ 5. These claims are insufficiently pleaded for the same reasons as her disability discrimination claim—namely, Ms. Anello does not sufficiently plead that she is a qualified individual with a disability. Therefore, Ms. Anello's failure to accommodate claim is dismissed.

### c. Harassment/Hostile Work Environment Based on Disability

The FAC alleges one claim for "harassment/hostile work environment" based on Ms. Anello's disability. *See* FAC at 23-24. The Ninth Circuit has not decided whether a hostile work environment claim exists under the ADA, and it is not clear whether such a claim exists under the Rehabilitation Act. *See Garity v. APWU Nat'l Labor Org.*, 655 Fed. Appx. 523, 523-25 (9th Cir. 2016) ("[a]ssuming without deciding that [a hostile work environment claim under the ADA] exists in this circuit, and that we would apply Title VII law to analyze it . . ." (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) and *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006)). Other circuits have held that claims of disability-based harassment are cognizable. *See, e.g.*, *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-236 (5th Cir. 2001); *Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720-22 (8th Cir. 2003); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175-76 (4th Cir. 2001). The Fifth Circuit states that in order to prove a claim of disability-based harassment, the plaintiff must prove the following five elements:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers*, 247 F.3d at 235-36. "Moreover, the disability-based harassment must be sufficiently

18

1   pervasive or severe to alter the conditions of employment and create an abusive working

2   environment." *Id*. at 236 (quotation omitted).

3        Assuming without deciding that such a claim exists and that the Ninth Circuit would adopt

4   a test for a disability-based harassment claim that is similar to the one articulated by the Fifth

5   Circuit, the court concludes that Ms. Anello has failed to allege a claim for harassment based on

6   disability. *See Rodriguez v. John Muir Med. Ctr*., No. 09-00731 CW, 2010 WL 3448567, at *10-

7   11 (N.D. Cal. Aug. 31, 2010) (applying *Flowers* five-factor test to claim of disability-based

8   harassment). Specifically, the FAC does not allege facts to show that the alleged disability-based

9   harassment Ms. Anello experienced was sufficiently pervasive or severe enough to alter the

10  conditions of her employment. In order to prove harassment causing a hostile work environment,

11  a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule,

12  and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's

13  employment and create an abusive working environment[.]'" *Fowler v. Potter*, No. C 06-04716

14  SBA, 2008 WL 2383073, at *9 (N.D. Cal. June 9, 2008) (quoting *Nat'l R.R. Passenger Corp. v.

15  Morgan*, 536 U.S. 101, 116 (2002)). Courts are "to determine whether an environment is

16  sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the

17  discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere

18  offensive utterance; and whether it unreasonably interferes with an employee's work

19  performance." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

20       Here, the FAC alleges the following allegedly harassing conduct: 1) her supervisor

21  "physically tried to interfere with taking [her] medication on at least one occasion on June 28,

22  2011"; 2) "nearly every time [she] attempted to take a break, [she] was told that it wasn't time for

23  [her] break yet, that [she] had not been typing enough"; 3) her supervisor "teased [her] that [she]

24  was 'crying again' because of the pain [she] was experiencing"; and 4) her supervisor "refused to

25  complete [her] Worker's Compensation paper work." FAC ¶ 19, FAC at 24 ¶ 3. The FAC does

26  not include enough detail about these incidents to state a claim for disability-based harassment.

27  For example, Ms. Anello does not provide any details of her supervisor's alleged physical

28  interference with her taking her medication, such as when and where this happened and how her

supervisor "interfered" with her attempt to take medication.  She also does not allege specific facts

supporting her allegation that she was prevented from taking breaks, such as who refused to let her

take breaks, the dates this occurred, and the circumstances of the incident(s).  The Supreme Court

has cautioned that "conduct must be extreme to amount to a change in the terms and conditions of

employment" for purposes of harassment claims.  *Faragher*, 524 U.S. at 788.  Without more

details of the alleged harassment, the court is unable to determine whether Ms. Anello has

plausibly alleged conduct that was sufficiently severe or pervasive to alter the conditions of her

employment.  As currently pleaded, the FAC does not state a claim for disability-based

harassment.[4]  Ms. Anello's claim for harassment based on disability is dismissed.

### 2.    Administrative Procedure Act Claim

Ms. Anello's final claim for relief is for violation of the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 701-706.  Ms. Anello alleges that SSA's "decision not to cancel [her]

'voluntary retirement' was arbitrary and capricious."  FAC at 25 ¶ 1.

"The APA permits a citizen suit against an agency when an individual has suffered 'a legal

wrong because of agency action' or has been 'adversely affected or aggrieved by agency action

within the meaning of a relevant statute.'"  *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1103

(9th Cir. 2007) (quoting 5 U.S.C. § 702).  However, an agency action is subject to judicial review

only when it is "made reviewable by statute" or a "final agency action" has issued.  *See* 5 U.S.C. §

704.  "When . . . review is sought not pursuant to specific authorization in the substantive statute,

but only under the general review provisions of the APA, the 'agency action' in question must be

'final agency action.'"  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (citing 5 U.S.C. §

704)).  "An agency action is 'final' when (1) the agency reaches the 'consummation' of its

decisionmaking process and (2) the action determines the 'rights and obligations' of the parties or

---

[4] The government argues that Ms. Anello has not stated a claim for harassment based on disability because the FAC does not sufficiently allege that she was a qualified individual with a disability. Mot. 22.  However, the sole case it cites, *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003), addresses the requirements for a hostile work environment claim based on race, not disability.  It is therefore inapposite.  The government does not cite any other authority for the position that a plaintiff must allege that she was a qualified individual with a disability in order to bring a disability-based harassment claim, including authority from other circuits that have recognized such a claim.

is one from which 'legal consequences will flow.'" *Rattlesnake Coal.*, 509 F.3d at 1103.

Here, the FAC does not identify a "final agency action" or a statutory provision authorizing review of any SSA decision. Accordingly, the FAC fails to state a claim under the APA. Ms. Anello's APA claim is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the government's motion is granted and the FAC is dismissed as follows: Ms. Anello's claims for disability discrimination, failure to accommodate, and harassment/hostile work environment based on disability, as well as her APA claim, are dismissed with leave to amend. Claims based on the allegations that management demanded that Ms. Anello's doctor impose further medical restrictions and that the SSA forged her retirement application are dismissed with prejudice. Any claims based on harm arising after the EEO proceedings are also dismissed with prejudice.

Ms. Anello has already been given one opportunity to amend the complaint. Because it is not "absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), Ms. Anello is granted one final opportunity to amend her complaint to state a claim. **Any such second amended complaint must be filed by February 12, 2019.**


      **IT IS SO ORDERED.**

Dated: January 22, 2019



Donna M. Ryu
United States Magistrate Judge