UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA JESUS ANELLO,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 18-cv-00070-DMR<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br>Re: Dkt. No. 65 |

Pro se Plaintiff Maria Jesus Anello filed a third amended complaint against her former employer, the United States Social Security Administration ("SSA"), alleging claims stemming from her employment and 2011 retirement. [Docket No. 73.] The government now moves to dismiss the third amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). [Docket No. 74.] The court held a hearing on August 8, 2019. For the following reasons, the motion is granted and the third amended complaint is dismissed. Ms. Anello's claims for discrimination based on national origin and retaliation are dismissed with prejudice. The remaining claims for disability discrimination, failure to accommodate her disability, and hostile work environment/harassment based on disability are dismissed without prejudice, and Ms. Anello is granted leave to file a **fourth and last** amended complaint alleging those claims by no later than **September 13, 2019**. No further amendments will be permitted.

I.  **BACKGROUND**

    A.  **Allegations in the Third Amended Complaint[1]**

Ms. Anello makes the following allegations in the third amended complaint ("TAC"): Ms.

---

[1] The court notes that Ms. Anello captioned the third amended complaint as "Response to Order to Show Cause."

Anello worked for the SSA at its Santa Rosa Field Office. She does not specify her position. TAC 1, ¶ 4. She alleges that the essential functions of her position were as follows:

- [A]nswering the phones, research, filing, printing information for claimants, calculate benefits, working at the front desk, etc. . . .[.] TAC 3 ¶ 12 (ellipses in original).

- "[T]raining my coworkers on the procedures for locking, inspecting, ordering, and mailing the applications for Social Security Cards to Wilkes-Barre Data Center, with required procedures and confirmation. Transferring the earnings from fraudulent Social Security Numbers, to the new and correct SS numbers for individuals with the necessary proofs, following up with the correct procedures, I also corrected records and processed non receipts of benefits, and placed in pay or retained payments for prisoners, with different rules for Disability, Social Security Supplemental Income, or for concurrent benefits. This included faxing and calling the different prisons to have beneficiaries placed correctly in pay if released or suspending benefits. I also entered the wages for working beneficiaries so they would not have overpayments or underpayments, documenting and sending back the paperwork with prepaid envelopes. I corrected mistakes with names, birthdates, and gender for SSN applications, and changing the sex of record and last names of same sex marriages, among many other things. I followed up with different tasks and processes, and responded promptly to all the requests from different agencies, beneficiaries, coworkers and managers, using all automated programs like PCACS, MDWs, POS inputs, 2.8,SS5s, File Requests, NDREDs, Bene Verifications, Wages Earnings, Eview, Mail, Phone messages, Reconsiderations etc. TAC 3 ¶ 13.

On March 30, 2010, Ms. Anello requested a reasonable accommodation "due to a preexisting heart condition," which was "permanent atrial fibrillation with a history of strokes and having had one open heart surgery." *Id*. at 2 ¶ 1. "[M]onths in advance of [a] remodeling," Ms. Anello requested "turning [her] desk around in the way it was for 9 years" to accommodate her heart condition. After her desk had been "installed facing the wrong direction," the response she received was "to install a small mirror." *Id*. at 2 ¶¶ 2, 3.

Ms. Anello alleges that the mirror did not effectively accommodate her heart condition, and instead "increased [her] anxiety, and ultimately damaged [her] left fingers, hand, elbow, and neck." She alleges, "[i]f the accommodations that I had requested had been provided, I would have been able to perform the essential functions of my job without undue hardship to the agency, and without getting injured." *Id*. at 2 ¶ 4.

2

On August 2, 2010, Ms. Anello "suffered a work related injury 'sprain of left hand/wrist', later developing ramifications to [her] elbow's ulnar nerve, and neck, [and] after months of painful nerve tests, therapies, 86 doctor visits, medications, which produced terrible secondary effects, on May 26th 2011 [she] was found to have Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome (RSD/CRPS)." *Id*. at 2 ¶ 6.

Ms. Anello requested the following accommodation of her condition:

> [A] break to take my pain medication every 90 minutes if needed (medication couldn't be taken more often than every 90 minutes . . . ), the timing of my medication was not like clockwork, it depended on many variables, like the amount and frequency of computer keying. I requested short respite times to perform other essential functions like answering the phones, research, filing, printing information for claimants, calculate benefits, working at the front desk, etc….[.]

*Id*. at 3 ¶ 12. She alleges that she provided medical documentation to support her request for a reasonable accommodation of her condition. *Id*. at 2 ¶ 6. However, her request was "wrongfully denied," which "injur[ed] [her]" and forced her to use her accumulated leave, and eventually "caus[ed] [her] condition to worsen to the point where [she] later . . . had to file for FERS disability." *Id*. at 2 ¶ 8. Ms. Anello alleges that her employer "refused to accept" the requested accommodation and "demanded that [she] produce additional medical documentation, which effectively disregarded [her] accommodation request." *Id*. at 2 ¶ 9. She makes the following allegation about the SSA's response to her request:

> [T]he agency decided that the accommodation that they would have to give in order to provide me with breaks to take my medication included restrictions for both hands—which went beyond what I was asking for—and the agency then claimed I could not be accommodated. Their increasing demands for medical documentation was intended, in my belief, to force me out of employment rather than accommodate me, thus discriminating against me for being disabled.

*Id*. at 2-3 ¶ 9.

According to Ms. Anello, she was a qualified individual with a disability, entitled to a reasonable accommodation, and was "able to perform the essential functions of [her] position," *id*. at 2 ¶ 7, as she had been doing from May 26, 2011 until June 29, 2011, her last day of work. *Id*. at 3 ¶ 10. She further alleges that her physician-recommended reasonable accommodation would not

3

have caused "undue hardship to the agency." *Id*. at 3 ¶ 10.

Ms. Anello further alleges that she was subject to a hostile work environment, which she describes as follows:

> The harassment that I received was prohibited discrimination due to my disability, including physical intimidation and extreme hostility by Assistant Manager Paul Sampson, and created a Hostile Work Environment. He is a large and imposing man and he would be really derogative, he physically blocked me on June 28th 2011, to get to my desk for pain medication while I was crying in pain, blocked me a second time when I tried to get permission from another manager, then he mocked me when my Supervisor arrived telling her: 'there she is . . . crying again'. His discriminatory attitude towards me included physical posturing, increased volume and harsh tone of voice, the making of facial expressions, he would glower and look down at me and physically intimidated me. Paul's face would contort when talking to me, and with hostility, he would scowl at me. Mr. Sampson told me that I was never going to be promoted while he was at the Santa Rosa District Office. He wrote on my SF-50 that the agency would appeal any award of unemployment compensation benefits, refused to cancel my 'Voluntary Retirement' even after receiving a letter from Chief Executive, President Obama . . . and OPM confirming the annulment, voidance, and repeal of the Voluntary Retirement.
>
> Mr. Sampson blocked my Reasonable Accommodation request to have my desk changed, as well as refusing to process my Workers Compensation claim, Voluntary Leave Transfer Program request, Family Leave and so on.

*Id*. at 4 ¶¶ 14, 15 (first ellipses in original).

Based on these allegations, Ms. Anello appears to bring the following claims for relief: 1) discrimination based on national origin, Hispanic; 2) discrimination based on disability; 3) failure to accommodate her disability, based on the denials of her requests to change the position of her desk and permit her to take breaks to take medication; 4) hostile work environment/harassment based on disability; and 5) "reprisal for EEO" and her workers compensation claim. *Id*. at 5-6.

### B. Procedural History

On November 20, 2017, Ms. Anello filed a complaint which did not formally plead individual claims for relief but in which she alleged that she suffered discrimination and retaliation during her employment by the SSA. The court liberally construed the complaint to allege claims for 1) disability discrimination; 2) failure to accommodate disability; 3) employment

4

discrimination based on national origin (Spanish); and 4) retaliation.

The government moved to dismiss the complaint. [Docket No. 17.] Following a hearing on August 9, 2018, the court granted the motion and dismissed the complaint. *Anello v. Berryhill*, No. 18-cv-00070-DMR, 2018 WL 3845617 (Aug. 13, 2018). The court granted Ms. Anello leave to file an amended complaint by September 4, 2018 alleging claims for disability discrimination, failure to accommodate disability, national origin disability, retaliation, and age discrimination. *Id*. at *4-6. The court dismissed any claim under the Federal Employees' Compensation Act for lack of subject matter jurisdiction. *Id*. at *6-7.

Ms. Anello filed a first amended complaint ("FAC") on September 5, 2018, and the government moved to dismiss. [Docket Nos. 47 (FAC), 50.] On January 22, 2019, the court granted the motion. *Anello v. Berryhill*, No. 18-cv-00070-DMR, 2019 WL 285197 (N.D. Cal. Jan. 22, 2019) ("*Anello II*". The court dismissed with prejudice claims that exceeded the scope of Ms. Anello's EEO proceedings for lack of subject matter jurisdiction. These included Ms. Anello's claims that management demanded that her doctor impose further medical restrictions and that SSA forged her retirement application, and claims based on alleged harms Ms. Anello experienced after the EEO proceedings. *Id*. at *7-8.

The court also dismissed the following claims under Rule 12(b)(6) with leave to amend: disability discrimination, failure to accommodate Ms. Anello's disability, harassment/hostile work environment based on disability, and violation of the Administrative Procedure Act. *Id*. at *9-12. The court granted Ms. Anello "one final opportunity to amend her complaint to state a claim." *Id*. at *12.

Ms. Anello timely a second amended complaint (SAC) on February 22, 2019 (Docket No. 64) and the government again moved to dismiss. [Docket No. 65.] On May 20, 2019, after the parties had fully briefed the motion, the court vacated the hearing pursuant to Civil Local Rule 7-1(b). [Docket No. 70.] The following day, Ms. Anello filed a motion requesting leave to file a response to Defendant's reply brief, in which she stated that she had visited the Pro Bono Project seeking "legal advice on how to cure any defects in [her] claim," and that she had been prepared to offer additional argument and facts in support of the SAC at the subsequently vacated hearing on

the motion to dismiss. [Docket No. 71.] As Ms. Anello described facts in her motion for leave to file a response that had not been alleged in previous versions of her complaint or any other filing, the court denied Defendant's motion to dismiss the SAC without prejudice and granted Ms. Anello "**one final opportunity to plead her best case in a third amended complaint that includes all relevant facts supporting her claims.**" [Docket No. 72 (emphasis in original).] The court further ordered that "Plaintiff may not refer to or incorporate by reference any prior filings, and may not re-plead any claims that have been dismissed with prejudice." *Id*. (citing *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.")).

Ms. Anello timely filed a third amended complaint, erroneously captioned as "Response to Order to Show Cause." Defendant now moves to dismiss.

## II. LEGAL STANDARDS

The government moves to dismiss the TAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

### A. Realleged Claims Previously Dismissed With Prejudice

As noted, the court previously dismissed with prejudice claims that exceeded the scope of Ms. Anello's EEO proceedings, including Ms. Anello's claims that management demanded that her doctor impose further medical restrictions and that SSA forged her retirement application, and claims based on alleged harms Ms. Anello experienced after the EEO proceedings. In the TAC, Ms. Anello realleges that management demanded "restrictions for both hands" in order to accommodate her. TAC 3 ¶ 9. She also realleges that management forged her retirement application, alleging that her "FERS Disability application was falsified by management trying to obstruct my FERS DIB/RIB approval." *Id.* at 5 ¶ 5. These claims are again dismissed with prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, as they exceed the scope of the EEO proceedings. *See Anello II*, 2019 WL 285197 at *7-8.

### B. Motion to Dismiss for Failure to State a Claim

The government moves pursuant to Rule 12(b)(6) to dismiss Ms. Anello's remaining claims. As an initial matter, the court notes that in her opposition to the motion, Ms. Anello asks the court "to consider all the original and amended complaint(s) together and to consider all facts and arguments raised as a whole[.]" Opp'n 2. The court declines to do so, as it expressly warned Ms. Anello that the third amended complaint must "**include**[] **all relevant facts supporting her claims** . . . and must be a complete statement of Plaintiff's claims," and that Ms. Anello "may not refer to or incorporate by reference any prior filings[.]" [Docket No. 72 (emphasis in original).]

#### 1. National Origin Discrimination

"Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex or national origin." *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985). To state a claim for employment discrimination based on national origin, Ms. Anello must allege that (1) she is a member of a protected class, (2) she was performing her job in a satisfactory manner, (3) she suffered an adverse employment action, and (4) she was treated differently than similarly situated persons outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The sole allegation in the TAC related to national origin discrimination is the statement that Defendant "discriminated against Plaintiff based on her national origin (Hispanic)[.]" TAC 5. It does not allege any other facts to support a claim that any actions were taken against her because she is Hispanic. Therefore, the claim is dismissed. As the court previously granted Ms. Anello an opportunity to amend this claim, the dismissal is with prejudice. *See Anello*, 2018 WL 3845617, at *5 (identifying deficiencies in national origin discrimination claim and dismissing with leave to amend).

### 2. Rehabilitation Act Claims

In the TAC, Ms. Anello alleges claims under the Rehabilitation Act for disability discrimination, failure to provide reasonable accommodation, and hostile work environment/harassment based on disability.

The Rehabilitation Act, 29 U.S.C. § 791, provides the exclusive remedy for federal employees alleging disability discrimination. *Johnston v. Horne,* 875 F.2d 1415, 1420 (9th Cir.1989), *overruled on other grounds by Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89 (1990). Courts use the standards applied under the Americans with Disabilities Act ("ADA") to determine whether a violation of the Rehabilitation Act occurred in the federal employment context. *Lopez v. Johnson,* 333 F.3d 959, 961 (9th Cir. 2003) ("Section 501 borrows its substantive standards from the Americans with Disabilities Act (ADA)." (citing 29 U.S.C. § 791(g)); *see also Coons v. Sec'y of the U.S. Dept. of* Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act").

#### a. Disability Discrimination

In order to state a disability discrimination claim under the Rehabilitation Act, a plaintiff must allege that "(1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). For purposes of the Rehabilitation Act, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as

having such an impairment." *Id*. (citing 42 U.S.C. § 12102(2)).

The court has twice dismissed Ms. Anello's disability discrimination claim because she did not sufficiently allege that she is "otherwise qualified for employment." *Anello*, 2018 WL 3845617, at *5; *Anello II*, 2019 WL 285197, at *9-10. A qualified individual is "an individual with a disability who, *with or without reasonable accommodation*, can perform the *essential functions* of the employment position that such individual holds or desires." *Bates v. United Parcel Serv.*, 511 F.3d 974, 989 (9th Cir. 2007) (emphasis in original) (quoting 42 U.S.C. § 12111(8)). "'Essential functions' are 'fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position.'" *Id*. (quoting 29 C.F.R. § 1630.2(n)(1)). "Even when a disabled employee cannot perform the essential functions of her job unassisted, she can still be qualified for the position if she could accomplish its essential functions 'with . . . reasonable accommodation.'" *Brown v. Potter*, 457 Fed. Appx. 668, 670 (9th Cir. 2011) (quoting 42 U.S.C. § 12111(8)). "Reasonable accommodations" are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

In order to determine whether a plaintiff is a qualified individual, "[t]he court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Bates*, 511 F.3d at 990 (citations omitted). The court previously held that the FAC "does not sufficiently identify the essential functions of the position that Ms. Anello held" or "allege that Ms. Anello could perform those functions with or without a reasonable accommodation." *Anello II*, 2019 WL 285197, at *9.

In the TAC, Ms. Anello describes the essential functions of her position as "answering the phones, research, filing, printing information for claimants, calculate benefits, working at the front desk, etc. . . [.]" TAC 3 ¶ 12 (ellipses in original). The TAC contains additional alleged "essential functions" as follows:

10

> [T]raining my coworkers on the procedures for locking, inspecting, ordering, and mailing the applications for Social Security Cards to Wilkes-Barre Data Center, with required procedures and confirmation. Transferring the earnings from fraudulent Social Security Numbers, to the new and correct SS numbers for individuals with the necessary proofs, following up with the correct procedures, I also corrected records and processed non receipts of benefits, and placed in pay or retained payments for prisoners, with different rules for Disability, Social Security Supplemental Income, or for concurrent benefits. This included faxing and calling the different prisons to have beneficiaries placed correctly in pay if released or suspending benefits. I also entered the wages for working beneficiaries so they would not have overpayments or underpayments, documenting and sending back the paperwork with prepaid envelopes. I corrected mistakes with names, birthdates, and gender for SSN applications, and changing the sex of record and last names of same sex marriages, among many other things. I followed up with different tasks and processes, and responded promptly to all the requests from different agencies, beneficiaries, coworkers and managers, using all automated programs like PCACS, MDWs, POS inputs, 2.8,SS5s, File Requests, NDREDs, Bene Verifications, Wages Earnings, Eview, Mail, Phone messages, Reconsiderations etc.

TAC 3 ¶ 13.

While the TAC describes Ms. Anello's position in far greater detail than the complaint or the FAC and characterizes all of her job duties as "essential functions," the allegations are still insufficient to plead that Ms. Anello was a qualified individual because they do not provide enough detail about the essential functions of the position that appear to be at issue in this case. In particular, as the court discussed in its order dismissing the FAC, "although the FAC contains numerous allegations about Ms. Anello's physical condition and limitations, it omits any discussion of the physical requirements of the Service Representative position. . . . [the] allegations suggest that Ms. Anello's supervisors expected her to type and/or use a computer to carry out her job duties, [but] the FAC is silent as to any physical requirements of the Service Representative position, and silent about whether she could perform any of physical requirements of the job with or without a reasonable accommodation." *Anello II*, 2019 WL 285197, at *9.

The TAC fails to provide any additional details about the physical requirements of the Service Representative position and Ms. Anello's ability to perform them, with or without a reasonable accommodation. Ms. Anello's August 2010 injury that resulted in her developing Reflex Sympathetic Dystrophy/Complex Regional Pain Sydrome was the sprain of her left hand and wrist. Ms. Anello previously submitted to the court copies of "Work Status Reports" from her

11

physician detailing her work restrictions in May and June 2011. [Docket No. 56-3 (6-page exhibit).] While it is not clear which contained Ms. Anello's operative work restrictions, each appears to significantly limit Ms. Anello's use of her left hand (or both hands) and ability to perform repetitive hand motions. However, several of the "essential functions" identified in the TAC appear to involve physical tasks that require the use of her hands, including performing repetitive hand motions, such as using a computer, using a fax machine, and sending mail, but Ms. Anello does not allege how much time was spent performing these functions or that she could perform the physical requirements of these tasks with or without a reasonable accommodation.

The court concludes that the allegations in the TAC are insufficient to plausibly allege that Ms. Anello could have performed the essential functions of her position with or without a reasonable accommodation. They therefore do not sufficiently allege that Ms. Anello was a qualified individual. Her disability discrimination claim is thus dismissed. Ms. Anello has been given numerous opportunities to amend the complaint to plead a disability discrimination claim but has failed to do so. The court grants her one last opportunity to amend the complaint to state a disability discrimination claim, including alleging that she was a qualified individual with a disability and that she suffered discrimination because of her disability.

### a. Failure to Accommodate

Ms. Anello next alleges that the SSA failed to accommodate her disability. In order to state a claim under the Rehabilitation Act for failure to accommodate a disability, a plaintiff must show that (1) she is disabled; (2) she is a qualified individual, meaning that she could meet the essential requirements of the position with or without reasonable accommodation; and (3) a reasonable accommodation is possible. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Ms. Anello's failure to accommodate claim is based upon the denial of her requests to

change the configuration of her desk and for breaks to take pain medication as needed. *See* TAC 5. This claim remains insufficiently pleaded for the same reasons as her disability discrimination claim—namely, Ms. Anello has failed to plead that she is a qualified individual with a disability. Therefore, Ms. Anello's failure to accommodate claim is dismissed without prejudice. She is granted one final opportunity to amend the complaint to state a failure to accommodate claim.

### b. Harassment/Hostile Work Environment Based on Disability

The TAC alleges a claim for harassment/hostile work environment based on Ms. Anello's disability. TAC 4 ¶ 14.

The Ninth Circuit has not decided whether a hostile work environment claim exists under the ADA, and it is not clear whether such a claim exists under the Rehabilitation Act. *See Garity v. APWU Nat'l Labor Org.*, 655 Fed. Appx. 523, 523-25 (9th Cir. 2016) ("[a]ssuming without deciding that [a hostile work environment claim under the ADA] exists in this circuit, and that we would apply Title VII law to analyze it . . ." (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) and *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006)). Other circuits have held that claims of disability-based harassment are cognizable. *See, e.g.*, *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-236 (5th Cir. 2001); *Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720-22 (8th Cir. 2003); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175-76 (4th Cir. 2001). The Fifth Circuit states that in order to prove a claim of disability-based harassment, the plaintiff must prove the following five elements:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers*, 247 F.3d at 235-36. "Moreover, the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (quotation omitted).

In its order dismissing the FAC, the court held that "[a]ssuming without deciding that such

13

1 a claim exists and that the Ninth Circuit would adopt a test for a disability-based harassment claim that is similar to the one articulated by the Fifth Circuit, . . . Ms. Anello has failed to allege a claim for harassment based on disability." *Anello II*, 2019 WL 285197, at *11 (citation omitted). Specifically, the court found that "the FAC does not allege facts to show that the alleged disability-based harassment Ms. Anello experienced was sufficiently pervasive or severe enough to alter the conditions of her employment." *Id.*

In order to prove harassment causing a hostile work environment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Fowler v. Potter*, No. C 06-04716 SBA, 2008 WL 2383073, at *9 (N.D. Cal. June 9, 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Courts are "to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

The TAC includes a lengthy paragraph detailing the allegedly harassing conduct directed towards Ms. Anello by Assistant Manager Paul Sampson. The conduct includes the following: on June 28, 2011, Sampson physically blocked Ms. Anello from getting to her desk for her pain medication while she was "crying in pain," "blocked [her] a second time when [she] tried to get permission from another manager," and then "mocked her" by saying "there she is . . . crying again." TAC 4 ¶ 14. His harassing conduct also included "physical posturing, increased volume and tone of voice," and "glower[ing]" and "scowling at" Ms. Anello.

Construing these allegations in the light most favorable to Ms. Anello, the court concludes that the TAC plausibly alleges conduct that was sufficiently severe or pervasive to alter the conditions of Ms. Anello's employment. However, the TAC does not state a claim for harassment/hostile work environment based on disability, because it does not allege that Sampson's conduct was "based on [Ms. Anello's] disability or disabilities." *Flowers*, 247 F.3d at

14

235-36.

Further, the TAC does not allege that the SSA "knew or should have known of the harassment and failed to take prompt, remedial action." *See id*. In the Title VII context, "[a]n employer's liability for harassing conduct is evaluated differently when the harasser is a supervisor as opposed to a coworker." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir. 2004) (citing *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001)). "An employer is vicariously liable for a hostile environment created by a supervisor, although such liability is subject to an affirmative defense." *Id.* (citations omitted). "A supervisor is a person who can take tangible employment actions against an employee, including effecting 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 689 (9th Cir. 2017) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)). To the extent that Ms. Anello contends that Sampson, the alleged harasser, was a "supervisor" within the meaning of that term under Title VII, the TAC alleges only that Sampson was the "Assistant Manager." It does not allege any facts about his responsibilities and degree of authority over Ms. Anello sufficient to support a theory that Sampson's knowledge can be imputed to the SSA.

To the extent Sampson was instead Ms. Anello's coworker, Ms. Anello must allege that the SSA "knew or should have known of the harassment but did not take adequate steps to address it." *McGinest*, 360 F.3d at 1119. (quoting *Swinton*, 270 F.3d at 803). Here, the TAC alleges that after Sampson physically blocked her from her desk to obtain pain medication, he blocked her again when she tried to get permission from another manager and "mocked [her] when [her] Supervisor arrived telling her: 'there she is . . . crying again'." While these facts suggest that Ms. Anello's "Supervisor" witnessed one incident of Sampson's allegedly harassing conduct, Ms. Anello does not identify that individual, describe his or her responsibilities and degree of authority at the SSA, or otherwise allege facts to support the claim that "management-level employees knew, or in the exercise of reasonable care should have known" of Sampson's conduct. *See Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991) (quotation omitted).

15

Accordingly, Ms. Anello's claim for harassment/hostile work environment based on disability is dismissed with leave to amend.

### 3. Retaliation Claim

The final claim is for "reprisal" or retaliation "for Workers Compensation injury, and for denial of my Reasonable Accommodation Request of turning my desk around, without blocking the entrance) activity[.]" TAC 5.

Under Title VII, employers may not take any adverse employment action against an employee who has 1) opposed any practice made unlawful by Title VII; or 2) "made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, "a plaintiff must establish: (1) she was engaged in protected activity; (2) defendant took an adverse employment action; and (3) a causal connection existed between plaintiff's protected activity and defendant's adverse employment action." *Lelaind v. City & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008)

In dismissing the original complaint, the court explained that in order to state a retaliation claim, "Ms. Anello must identify the protected activity in which she engaged and allege facts to support a causal connection between the protected activity and any adverse action, such as her forced retirement." *See Anello*, 2018 WL 3845617, at *5-6. The TAC fails to do so. Accordingly, the claim is dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the government's motion is granted in part and denied in part. The national origin discrimination and retaliation claims are dismissed with prejudice. The disability discrimination, failure to accommodate, and harassment/hostile work environment based on disability claims are dismissed with leave to amend.

Ms. Anello is granted leave file a fourth and last amended complaint that includes all relevant facts supporting her claims. If Ms. Anello files a fourth amended complaint, she must title it as a fourth amended complaint, and it must include all of her allegations in one document; she cannot refer back to earlier versions of her complaint. She also cannot re-plead any of the

16

claims that the court already dismissed with prejudice.  **The fourth amended complaint must be filed by September 13, 2019**.

**IT IS SO ORDERED.**

Dated: August 30, 2019



Donna M. Ryu
United States Magistrate Judge